<u>Exhibit A</u>

Proposed Defendant-Intervenor State of Kansas's
Proposed Motion to Dismiss and Proposed Memorandum in Support

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW MEXICO**

IN RE: SHALE OIL ANTITRUST LITIGATION

The Document Relates to:

All Actions

Case No. 1:24-md-03119-MLG-LF

Judge Matthew L. Garcia

**[PROPOSED]
KANSAS'S MOTION TO DISMISS
THE POLITICAL SUBDIVISIONS' CLASS ALLEGATIONS**

Defendant-Intervenor State of Kansas, *ex rel*. Kris W. Kobach, Attorney General

("Kansas") respectfully moves the Court, under Federal Rules of Civil Procedure 12(b)(1),

12(b)(3), and 12(b)(6), to dismiss Plaintiffs City of San Diego's; City of San Jose, California's;

County of San Mateo's; Ford County, Kansas's; and Mayor and City Council of Baltimore's

(collectively, the "Political Subdivisions") class action allegations for the reasons set forth in this

motion, the accompanying memorandum, and any future oral argument.[1] (Doc. 86, ¶¶ 28-30, 37,

53.)

      1.    The Political Subdivisions, as named plaintiffs in this consolidated class action,

have pleaded class allegations on behalf of, "All persons, governmental and non-governmental

---

[1] Kansas's motion is purposefully limited to the Political Subdivisions. To the extent all or some of the Political Subdivisions' dismissed claims would result in an alleged class of individual consumers and businesses representing all governmental entities (it should not), Kansas would also argue individual consumers and businesses cannot usurp the State's sovereignty or the attorney general's authority and also lack standing to bring these claims. *See, e.g.*, 15 U.S.C. § 15c (attorney general's sole authority to bring federal antitrust claims for the State); K.S.A. 50-162 (attorney general's exclusive authority to bring Kansas Restraint of Trade Act claims for the State and its political subdivisions); K.S.A. 75-702 (attorney general's sole authority to prosecute civil matters for the State); *see also Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800 (10th Cir. 2011) (recognizing "that in deciding whether a plaintiff qualifies for *parens patriae* standing, it is appropriate to look to state law" (citing *Hous. Auth. of the Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991)).

entity end purchasers of crude oil derivative fuel products in the United States[.]" (Doc. 86, ¶ 248.) The Political Subdivisions have also pleaded class allegations on behalf of, "All persons, governmental and non-governmental entity end purchasers of crude oil derivative fuel products in [38 States,]" including Kansas. (Doc. 86, ¶ 249.)

2.      The Political Subdivisions' class allegations fail because they are an exercise of *parens patraie* authority. In the Tenth Circuit, "[t]he doctrine of *parens patriae* refers to the right of a State to sue to prevent or repair harm to its quasi-sovereign interests." *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1182 (D.N.M. 2020) (cleaned up). A State's "quasi-sovereign rights" is both "creating and enforcing its own law, and exercising sovereign power over individuals and entities within the relevant jurisdiction." *Id*. at 1179 n.10 (cleaned up). The State, when exercising its sovereign power, can use its authority to sue "on behalf of" its people and the entities in its jurisdiction—which constitutes *parens patriae* standing. *Id*. Importantly, in the Tenth Circuit, cities, counties, and other political subdivisions lack the ability to sue "on behalf of" without specific state law authorization to represent the state's sovereign interests. *Id*. at 1188 n.15; *see also Reynolds v. Sims*, 377 U.S. 533, 575 (1964) (recognizing political subdivisions "never were and never have been considered as sovereign entities" thus they cannot invoke *parens patriae* authority). And, none of the Political Subdivisions have the authority to represent Kansas's sovereign interests under Kansas law.

3.      Because the Political Subdivisions lack the authority to represent Kansas's legal claims, Kansas is the real party in interest. Under New Mexico's choice-of-law rules, Kansas substantive law determines the real party in interest. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1258 (D.N.M. 2010); *Atkins v. Heavy Petroleum Partners,*

*LLC*, 86 F. Supp. 3d 1188, 1201 (D. Kan.), *aff'd*, 635 F. App'x 483 (10th Cir. 2015). The legal

authority to sue on a statewide basis on behalf of Kansas, Kansas's agencies, all of its political

subdivisions, and all Kansans is the State through the attorney general. *See, e.g.*, *Mem'l Hosp.*

*Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668 (1986) ("The attorney general is the superior of the

county attorney, and whenever the state and the public interest are involved, the attorney general

is a party to the action. Wherever the public interest is involved or the state is a party, the

attorney general is primarily the proper counsel to appear"); *Mountain States Legal Found. v.*

*Costle*, 630 F.2d 754, 771 (10th Cir. 1980) (recognizing "general rule" that "the state attorney

general . . . alone has the right to represent the state as to litigation involving a subject matter of

statewide interest"); 15 U.S.C. § 15c (attorney general's sole authority to bring federal antitrust

claims for the State); K.S.A. 75-702(a) (attorney general's duty to represent the State in all

courts); K.S.A. 75-703 (attorney general's authority to prosecute all State contract claims);

K.S.A. 50-109 (authorizing attorney general to bring statewide restraint of trade claims); K.S.A.

50-628 (authorizing attorney general to enforce state consumer protection laws statewide).

Although the Political Subdivisions may be the proper party for their own, independent legal

claims, none of the Political Subdivisions are the proper party for Kansas or its legal claims.

     4.     To the extent some of the Political Subdivisions may wield some of the powers

they claim, each of their legal authority ends at their jurisdictional lines. *See BMW of N. Am.,*

*Inc. v. Gore*, 517 U.S. 559, 571 (1996) (noting that States can only act within their jurisdiction

because each State is independent); *State v. Vrabel*, 301 Kan. 797, 813 (2015) (discussing the

importance of jurisdictional limitations on cities and counties to protect local autonomy of other

political subdivisions, specifically in a law enforcement context); *Bd. of Cnty. Comm'rs v.*

*Nielander*, 275 Kan. 257, 264 (2003) (county home rule powers limited to "local and administrative duties" as local unit deems appropriate; subject to constitutional and statutory limitations); *Burns Internat. Sec. Servs. Corp. v. Cnty. of Los Angeles*, 123 Cal. App. 4th 162, 168 (2004); *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 443 (D. Md.), *as corrected* (Mar. 20, 2014).

5.    And, the Political Subdivisions' class allegations have fundamentally offended the Tenth and Eleventh Amendments by abusing Rule 23 to invade upon state sovereignty and compelling States (including through their political subdivisions) to participate in this case. *See*, *e.g.*, *N.J. Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018) (recognizing the Tenth Amendment prevents federal authority from being used "to issue direct orders to the governments of the States"); *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 270 (D. Mass. 2011) (recognizing broad State-inclusive class actions raise "significant sovereignty issues" under the Eleventh Amendment); *Bd. of Cnty. Comm'rs v. Lewis*, 203 Kan. 188, 191-92 (1969) (recognizing Kansas counties are "mere instrumentalities" and "an arm and agent of the state"). Accordingly, the Political Subdivisions' class allegations infringe on Kansas's Tenth and Eleventh Amendment rights by naming Kansas and all of its component parts as absent class members.

6.    The Political Subdivisions have wholly exceeded their right to act independently relating to their local affairs and concerns. If the Political Subdivisions wish to sue or be sued, that is quite literally their statutory or constitutional right. *But*, the Political Subdivisions' class allegations necessarily infringe on the sovereignty and independence of the States. And it must stop.

4

7.      This Court lacks subject-matter jurisdiction over the Political Subdivisions' class allegations because the Political Subdivisions lacks the legal authority and standing to assert claims on behalf of "all persons" and "all governmental entities." *See* Fed. R. Civ. P. 12(b)(1).

8.      The Political Subdivisions have failed to state a claim upon which relief can be granted because the Political Subdivisions are not the real parties in interest and lack the statutory authority to assert claims on behalf of "all persons" and "all governmental entities." *See* Fed. R. Civ. P. 12(b)(6).

9.      This Court is the improper venue for Kansas's legal claims purportedly represented by the Political Subdivisions. *See* Fed. R. Civ. P. 12(b)(3).

Pursuant to D.N.M. LR-Civ. 7.3(a), Kansas files a separate brief in support of its motion and files the same contemporaneously with its motion. Pursuant to D.N.M. LR-Civ. 7.6, Kansas respectfully requests oral argument on its motion.

THEREFORE, Defendant-Intervenor State of Kansas, *ex rel*. Kris W. Kobach, Attorney General, respectfully requests its motion be GRANTED and the Political Subdivisions' class allegations in this class action be DISMISSED without prejudice.[2]

---

[2] And, to the extent dismissal of the Political Subdivisions' class allegations would result in an alleged class of individual consumers and business entities representing governmental entities, Kansas respectfully requests dismissal of the governmental entities class allegations for the same reasons discussed in its motion and brief.

**Dated:** [DATE]                          Respectfully submitted,

                                           **KRIS W. KOBACH**
                                           **Attorney General of Kansas**

                                           */s/* DRAFT
                                           Melanie S. Jack, D.N.M. Bar No. 25-85
                                             *First Assistant Attorney General*
                                           Nicholas C. Smith, D.N.M. Bar No. 25-77
                                             *Assistant Attorney General*
                                           Adam T. Steinhilber, D.N.M. Bar No. 25-83
                                             *Assistant Solicitor General*
                                           **OFFICE OF ATTORNEY GENERAL**
                                           120 SW 10th Avenue, 2nd Floor
                                           Topeka, Kansas 66612
                                           Phone: (785) 296-3751
                                           Fax:    (785) 291-3699
                                           Email:  Melanie.Jack@ag.ks.gov
                                                   Nicholas.Smith@ag.ks.gov
                                                   Adam.Steinhilber@ag.ks.gov

                                           *Attorneys for State of Kansas*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this ____ day of _____, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance.

                                           */s/* DRAFT
                                           Nicholas C. Smith

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW MEXICO**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION | Case No. 1:24-md-03119-MLG-LF |
| The Document Relates to: | Judge Matthew L. Garcia |
| All Actions | |

**[PROPOSED]
KANSAS'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
<u>THE POLITICAL SUBDIVISIONS' CLASS ALLEGATIONS</u>**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

LEGAL STANDARD............................................................................................................4

ARGUMENT ........................................................................................................................5

I.   THE POLITICAL SUBDIVISIONS' CLASS ALLEGATIONS THREATEN
KANSAS'S SOVEREIGNTY. ...................................................................................6

    A.   The *parens patriae* authority is inherent in sovereigns—the States. ......................7

    B.   The Political Subdivisions' legal authority is derived from their States. ...............8

    C.   The Political Subdivisions' actual legal authority warrant dismissal of their
improper class allegations.......................................................................................10

    D.   The Political Subdivisions lack Kansas's sovereignty to represent Kansas and
Kansas's legal claims. ............................................................................................15

II.   THE POLITICAL SUBDIVISIONS' CLASS ALLEGATIONS MUST BE
DISMISSED BECAUSE KANSAS IS THE REAL PARTY IN INTEREST FOR
KANSAS'S CLAIMS. ...............................................................................................18

    A.   Kansas law determines the real party in interest for Kansas's claims. .................19

    B.   Kansas law designates the State as the real party in interest and vests statewide
authority in the attorney general. ..........................................................................19

    C.   The Political Subdivisions' powers end at their jurisdictional boundaries............21

    D.   The Political Subdivisions' class allegations are an improper exercise of
sovereign authority and face insurmountable class certification issues.................23

III.   THE PROPER VENUE FOR KANSAS'S CLAIMS IS IN KANSAS.............................25

CONCLUSION.....................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                          **PAGE(S)**

*Abrams Shell v. Shell Oil Co.,*
  343 F.3d 482 (5th Cir. 2003) ................................................................. 25

*Alden v. Maine,*
  527 U.S. 706 (1999) ........................................................................ 7, 16

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
  458 U.S. 592 (1982) ................................................................. 1, 4, 7, 8

*Atkins v. Heavy Petroleum Partners, LLC,*
  86 F. Supp. 3d 1188 (D. Kan.) ............................................................. 19

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,*
  571 U.S. 49 (2013) ............................................................................ 5

*Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs,*
  718 P.2d 235 (Colo. 1986) ................................................................... 9

*Bd. of Cnty. Comm'rs of Cnty. of Boulder v. Rocky Mountain Christian Church,*
  481 F. Supp. 2d 1181 (D. Colo. 2007) ..................................................... 9

*Bd. of Cnty. Comm'rs of Custer Cnty. v. Wilshire Oil Co. of Texas,*
  523 F.2d 125 (10th Cir. 1975) ............................................................. 25

*Bd. of Cnty. Comm'rs v. Lewis,*
  203 Kan. 188 (1969) .......................................................................... 9

*Bd. of Cnty. Comm'rs v. Nielander,*
  275 Kan. 257 (2003) ......................................................................... 22

*Blatchford v. Native Vill. of Noatak & Circle Vill.,*
  501 U.S. 775 (1991) ........................................................................... 7

*Blevins v. Hiebert,*
  13 Kan. App. 2d 318 (1989) ................................................................ 11

*BMW of N. Am., Inc. v. Gore,*
  517 U.S. 559 (1996) ............................................................... 1, 2, 10, 23

*Bourgeois v. Live Nation Ent., Inc.,*
 3 F. Supp. 3d 423 (D. Md.), *as corrected* (Mar. 20, 2014) ...................................... 14

*Burns Internat. Sec. Servs. Corp. v. Cnty. of Los Angeles,*
 123 Cal. App. 4th 162 (2004) .................................................................... 14

*City of Junction City v. Griffin,*
 227 Kan. 332 (1980) ............................................................................ 22

*City of Lafayette v. La. Power & Light Co.,*
 435 U.S. 389 (1978) .............................................................................. 8

*Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.,*
 956 F. Supp. 910 (D. Kan. 1997) ................................................................ 18

*Cmty. Commc'ns Co. v. City of Boulder,*
 455 U.S. 40 (1982) ............................................................................... 8

*Cnty. of Dorchester v. AT&T Corp.,*
 407 F. Supp. 3d 561 (D.S.C. 2019) ......................................................... 23, 25

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,*
 527 U.S. 666 (1999) ............................................................................. 17

*Cunningham v. Blythe,*
 155 Kan. 689 (1942) ............................................................................ 11

*Doyle v. Colborne Mfg. Co.,*
 93 F.R.D. 536 (D. Kan. 1982) .................................................................. 15

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez,*
 431 U.S. 395 (1977) .............................................................................. 6

*Est. of Holmes by & through Couser v. Somers,*
 387 F. Supp. 3d 1233 (D. Kan. 2019) .......................................................... 11

*Faulhaber v. Petzl Am., Inc.,*
 656 F. Supp. 3d 1257 (D. Colo. 2023) ......................................................... 25

*Fry v. United States,*
 421 U.S. 542 (1975) ............................................................................. 16

*Garcia v. Johanns,*
 444 F.3d 625 (D.C. Cir. 2006) ................................................................. 24

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ............................................................................................... 23

*Greater Heights Acad. v. Zelman,*
    522 F.3d 678 (6th Cir. 2008) ................................................................................... 9

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,*
    749 F. Supp. 2d 1235 (D.N.M. 2010)............................................................... 18, 19

*Hawaii v. Standard Oil Co. of Cal.,*
    405 U.S. 251 (1972) ............................................................................................ 6, 7

*Haytasingh v. City of San Diego,*
    2021 WL 5235563 (Cal. Ct. App. July 9, 2021) ................................................... 12

*Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City,*
    952 F.2d 1183 (10th Cir. 1991) ........................................................................... 1, 9

*Huntington v. Attrill,*
    146 U.S. 657 (1892) ........................................................................................... 1, 10

*Illinois v. Associated Milk Producers, Inc.,*
    351 F. Supp. 436 (N.D. Ill. 1972)......................................................................... 21

*In re Auto. Parts Antitrust Litig.,*
    No. 12-MD-02311, 2015 WL 14047405 (E.D. Mich. Apr. 30, 2015) ............... 18, 24

*In re Lithium Ion Batteries Antitrust Litig.,*
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ..................................................... 18, 24

*In re McKesson Governmental Entities Average Wholesale Price Litig.,*
    767 F. Supp. 2d 263 (D. Mass. 2011)............................................................ 5, 14, 17

*In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,*
    481 F.2d 122 (9th Cir.) ......................................................................................... 10

*In re Winter Storm Uri Nat. Gas Litig.,*
    2025 WL 660803 (D. Kan. Feb. 28, 2025).............................................................. 2

*Keenan-Coniglio v. Cumbres & Toltec Scenic Operating Comm'n,*
    2025 WL 684320 (D.N.M. Mar. 4, 2025) ............................................................... 5

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487 (1941) .............................................................................................. 18

*Kurns v. R.R. Friction Prods. Corp.,*
  565 U.S. 625 (2012) ........................................................................ 2

*Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States,*
  136 U.S. 1 (1890) ............................................................................ 7

*Massachusetts v. E.P.A.,*
  549 U.S. 497 (2007) ........................................................................ 8

*Mayor & City Council of Balt. v. Monsanto Co.,*
  2020 WL 1529014 (D. Md. Mar. 31, 2020) ........................................ 13

*Melnick v. TAMKO Bldg. Prods. LLC,*
  347 F.R.D. 79 (D. Kan. 2024) .......................................................... 24

*Mem'l Hosp. Ass'n, Inc. v. Knutson,*
  239 Kan. 663 (1986) .................................................................. 20, 21

*Mountain States Legal Found. v. Costle,*
  630 F.2d 754 (10th Cir. 1980) ........................................................ 20

*N.J. Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n,*
  584 U.S. 453 (2018) .................................................................... 7, 16

*N.Y. Times Co. v. Sullivan,*
  376 U.S. 254 (1964) ........................................................................ 2

*Nash Cnty. Bd. of Ed. v. Biltmore Co.,*
  640 F.2d 484 (4th Cir. 1981) .......................................................... 21

*Navajo Agric. Prods. Indus. v. United States,*
  608 F. Supp. 3d 1060 (D.N.M. 2022) ................................................ 4

*New Jersey v. New York,*
  345 U.S. 369 (1953) ................................................................ 2, 8, 15

*New Mexico v. McAleenan,*
  450 F. Supp. 3d 1130 (D.N.M. 2020) ....................................... 1, 4, 8, 9

*New York v. United States,*
  505 U.S. 144 (1992) ........................................................................ 7

*Off. of the People's Couns. for D.C. v. D.C. Water & Sewer Auth.,*
  313 A.3d 579 (D.C. 2024) .............................................................. 20

v

*Otis v. City of Los Angeles,*
    52 Cal. App. 2d 605 (1942) ................................................................ 12

*Pac. Gas & Elec. Co. v. Cnty. of Stanislaus,*
    16 Cal. 4th 1143 (1997) ..................................................................... 13

*Puerto Rico v. Cordeco Dev. Corp.,*
    534 F. Supp. 612 (D.P.R. 1982) ......................................................... 21

*Renne v. Geary,*
    501 U.S. 312 (1991) ............................................................................ 4

*Reynolds v. Sims,*
    377 U.S. 533 (1964) ................................................................... 1, 8, 9

*Rosales v. Citibank, Fed. Sav. Bank,*
    133 F. Supp. 2d 1177 (N.D. Cal. 2001) .............................................. 13

*San Diego Building Trades Council v. Garmon,*
    359 U.S. 236 (1959) ............................................................................ 2

*Stastny v. S. Bell Tel. & Tel. Co.,*
    628 F.2d 267 (4th Cir. 1980) .............................................................. 24

*State Bldg. & Constr. Trades Council of Cal. v. City of Vista,*
    54 Cal. 4th 547 (2012) ....................................................................... 13

*State ex rel. Stephan v. Bd. of Cnty. Comm'rs of Cnty. of Lyon Cnty.,*
    234 Kan. 732 (1984) .......................................................................... 11

*State ex rel. Stephan v. Brotherhood Bank & Tr. Co.,*
    8 Kan. App. 2d 57 (1982) ................................................................... 15

*State v. Vrabel,*
    301 Kan. 797 (2015) .......................................................................... 23

*State's Att'y of Balt. City v. City of Baltimore,*
    337 A.2d 92 (Md. 1975) ..................................................................... 13

*Stubbs v. McDonald's Corp.,*
    224 F.R.D. 668 (D. Kan. 2004) .......................................................... 23

*Swanson v. Bixler,*
    750 F.2d 810 (10th Cir. 1984) ............................................................. 5

*Thiebaut v. Colo. Springs Utils.,*
   455 F. App'x 795 (10th Cir. 2011) ........................................................... 9

*U.S. v. Scophony Corp. of Am.,*
   333 U.S. 795 (1948) ........................................................................... 26

*Walker v. Liggett Grp., Inc.,*
   982 F. Supp. 1208 (S.D.W. Va. 1997) ............................................... 14, 17

*Warren Cnty. v. North Carolina,*
   528 F. Supp. 276 (E.D.N.C. 1981) .......................................................... 9

*Warth v. Seldin,*
   422 U.S. 490 (1975) ............................................................................. 4

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,*
   402 F. Supp. 262 (E.D. Pa. 1975) ....................................................... 26

## CONSTITUTIONAL PROVISIONS

Cal. Const. art. 11, § 7 ...................................................................... 14

Kan. Const. art. 12, § 5 ...................................................................... 22

Md. Const. art. 11-A, § 1 .................................................................... 13

Md. Const. art. 11-A, § 4 .................................................................... 14

U.S. Const. art. III.......................................................................... 4, 7

## STATUTES

15 U.S.C. § 1................................................................................ 15

15 U.S.C. § 15c ......................................................................... 10, 20

15 U.S.C.§ 15h .............................................................................. 20

28 U.S.C. § 1391(b) .................................................................... 5, 25

Cal. Bus. & Prof. Code § 16759 ........................................................ 13

Cal. Bus. & Prof. Code § 17200 ........................................................ 13

K.S.A. 19-105 ................................................................................................................ 11

K.S.A. 19-101 ........................................................................................................... 11, 22

K.S.A. 19-101a ............................................................................................................. 11

K.S.A. 19-101c ............................................................................................................. 22

K.S.A. 19-723 ............................................................................................................... 14

K.S.A. 50-101 ............................................................................................................... 15

K.S.A. 50-109 ............................................................................................................... 20

K.S.A. 50-628 ............................................................................................................... 20

K.S.A. 60-217 ............................................................................................................... 19

K.S.A. 75-702 ............................................................................................................... 20

K.S.A. 75-710 ............................................................................................................... 14

Md. Code Ann., Com. Law § 11-209 ......................................................................... 13

**RULES**

Fed. R. Civ. P. 8(a)(1) ................................................................................................... 4

Fed. R. Civ. P. 12(b)(3) ................................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 23

Fed. R. Civ. P. 12(f) ..................................................................................................... 23

Fed. R. Civ. P. 17(a)(1) ............................................................................................... 18

Fed. R. Civ. P. 23(c)(1)(A) .......................................................................................... 23

Fed. R. Civ. P. 23(d) .................................................................................................... 23

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................................... 25

## **INTRODUCTION**

Political subdivisions are creations of the States, not independent or inherent sovereigns. Thus, the authority they wield is derived from state constitutional or statutory law. *Compare Reynolds v. Sims*, 377 U.S. 533, 575 (1964) (recognizing "the number, nature, and duration of the powers conferred upon them and the territory over which they shall be exercised rests in the absolute discretion of the state" (cleaned up)), *and Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183, 1192-93 (10th Cir. 1991) (recognizing a political subdivision's ability "to represent the state's sovereign interests" is determined by state law), *with Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982) (recognizing "*parens patriae* is inherent in the supreme power of every State"), *and New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1178 (D.N.M. 2020) (recognizing the State's "inherent sovereignty"). In other words, *some* political subdivisions are permitted *by their State* to exercise its sovereign powers. Even so, any party exercising sovereign power must respect the dignity of other sovereigns. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) (noting that States can only act within their jurisdiction because each State is independent); *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the State which enacts them, and can have extra-territorial effect only by the comity of other States.").

The Political Subdivisions'[1] attempt to represent a nationwide class of individual consumers, States, and other governmental entities usurps state sovereignty and inverts

---

[1] Plaintiffs City of San Diego; City of San Jose, California; County of San Mateo; Ford County, Kansas; and Mayor and City Council of Baltimore. (Doc. 86, ¶¶ 28-30, 37, 53.)

1

established legal principles. Disguised as a class action, the Political Subdivisions improperly seek to exercise *parens patriae* authority over every sovereign State and their political subdivisions and citizens. Allowing the Political Subdivisions to proceed with this litigation means each State's "sovereign dignity" will "be judicially impeached on matters of policy by [Kansas's, Maryland's, and California's] subjects." *See New Jersey v. New York*, 345 U.S. 369, 373 (1953).

These considerations are especially concerning in light of litigation having similar effect as state regulation.[2] *See Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) (recognizing "state regulation can be effectively exerted through an award of damages, and the obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy" (cleaned up)); *Gore*, 517 U.S. at 572, n.17 (1996) ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute"); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) ("The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised"); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1959) ("[R]egulation can be as effectively exerted through an award of damages as through some form of preventive relief."). The logical conclusion of this litigation is *five* political subdivisions representing less than 1.15 percent of the total U.S. population usurping state power to impose their regulatory will on sovereign States and their citizens. This is untenable.

---

[2] Courts in this Circuit have dismissed cases in part due to "the same regulatory effect" that plaintiffs' damages claims may exert. *See In re Winter Storm Uri Nat. Gas Litig.*, No. 24-1073-DDC-ADM, 2025 WL 660803, at *12 (D. Kan. Feb. 28, 2025).

Because Kansas and federal law vest the attorney general with *sole authority* to litigate statewide claims affecting Kansas, its agencies, its political subdivisions, and its people, the Kansas Attorney General intervened to protect Kansas's sovereign interests and prevent foreclosure of Kansas's possible claims against the Shale Oil Defendants.[3] *See* (Doc. ###.)

Kansas seeks dismissal of the Political Subdivisions' class allegations on three grounds: (1) the Political Subdivisions lack the authority to represent Kansas's claims; (2) Kansas is the real party in interest for Kansas's claims; and (3) Kansas's claims belong in Kansas's courts. Accordingly, this Court should dismiss the Political Subdivisions' class allegations.

## BACKGROUND

The Political Subdivisions allege the Shale Oil Defendants engaged in an international conspiracy involving twenty-five sovereign nations to restrict shale oil production and fix crude oil prices at an artificially high price. (Doc. 86, ¶ 1; Doc. 129, p. 1.) The allegations span multiple States, different continents, and at least one steakhouse. While Kansas takes no position on the facts alleged in this matter, Kansas *does* find the Political Subdivisions' class allegations extraordinarily offensive to its sovereignty. The Political Subdivisions purport to represent every citizen, every State, every state agency, every county, every municipality, and every other political subdivision in the United States. (Doc. 86, ¶ 248.) Even some of the political subdivision plaintiffs recognize this absurdity. *See* Doc. 23, at 3-4, *City of San Jose and County of San Mateo v. Hess Corp., et al.*, Case No. 1:24-cv-01000-MLG-LF (Oct. 18, 2024) (discussing class issues when governmental entities are included and citing caselaw criticizing State-

---

[3] Permian Resources Corporation, Chesapeake Energy Corporation, Continental Resources, Inc., Diamondback Energy, Inc., EOG Resources, Inc., Hess Corporation, Occidental Petroleum Corporation, Pioneer Natural Resources Co., Scott D. Sheffield, and John B. Hess. (Doc. 86, ¶¶ 70-79.)

inclusive classes).[4] The Political Subdivisions' class allegations raise complex issues of standing, *parens patriae* authority, federalism, and the balance of power between the States and their political subdivisions. To protect state sovereignty, this Court should dismiss the Political Subdivisions' class allegations.

## **LEGAL STANDARD**

Federal courts have limited jurisdiction. U.S. Const. art. III., § 2; *Navajo Agric. Prods. Indus. v. United States*, 608 F. Supp. 3d 1060, 1064 (D.N.M. 2022). And because they presumptively lack jurisdiction, the plaintiff must "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (cleaned up); *see also* Fed. R. Civ. P. 8(a)(1).

A Rule 12(b)(1) motion may facially challenge the Court's subject-matter jurisdiction, requiring the plaintiff to clearly show legal standing. *Navajo Agric. Prods. Indus.*, 608 F. Supp. 3d at 1064. A plaintiff must show both constitutional standing and prudential standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Sovereign entities may uniquely satisfy the constitutional standing burden as *parens patriae* when their action relates to a "quasi-sovereign interest." *Snapp*, 458 U.S. at 600; *McAleenan*, 450 F. Supp. 3d at 1182-83.

A Rule 12(b)(6) motion challenges whether the plaintiff's facts would entitle the plaintiff to relief, including whether the plaintiff is the real party in interest under Rule 17(a). *See Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 17(a) requires an action be

---

[4] To be clear about our distinguished positions, Kansas would also object to these political subdivisions' request to represent a governmental entities class *or* non-state governmental entities class because each would still usurp Kansas's sovereignty.

prosecuted in the name of the real party in interest, which is determined by state law in diversity cases. *Id*. If the plaintiff is not the real party in interest, courts often treat a Rule 17(a) objection like a Rule 12(b)(6) motion. *Id.* at 813-14; *Keenan-Coniglio v. Cumbres & Toltec Scenic Operating Comm'n*, No. 1:23-CV-01051-WJ-KK, --- F. Supp. 3d ---, 2025 WL 684320, at *7 (D.N.M. Mar. 4, 2025) (recognizing "dismissal under Rule 12(b)(6) is appropriate if the complaint is legally insufficient").

A Rule 12(b)(3) motion challenges venue. All civil actions must be brought in a proper federal district court under 28 U.S.C. § 1391(b) unless otherwise permitted by law. Fed. R. Civ. P. 12(b)(3); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). If the case does not fall within § 1391(b), "venue is improper, and the case must be dismissed or transferred[.]" *Atl. Marine Const. Co.*, 571 U.S. at 56.

## ARGUMENT

The Political Subdivisions claim to be the best representative of *every* person, State, state agency, county, city, and other political subdivision in the country. This is absurd and false. The Political Subdivisions' impermissible class allegations undermine the sovereignty of every State in the Union. *See In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 270 (D. Mass. 2011). The Court should dismiss the Political Subdivisions' class allegations because the Political Subdivisions lack standing and authority to sue on behalf of all States and their instrumentalities and citizens.

Although cloaked as a class action, these Political Subdivisions try to commandeer claims exclusively reserved to sovereign States, the end result of which would gravely disrupt the sacred balance of the States' position in the federal system. Venue is also improper because

none of the Political Subdivisions incurred any alleged injuries in this District. This Court should see the Political Subdivisions' conduct for what it is—an unlawful power grab of state authority—and cut it off now.

**The Political Subdivisions' class allegations threaten Kansas's sovereignty.**

The Political Subdivisions' class allegations are an attempt to bring universal *parens patriae* claims, an *ultra vires* act that undermines state sovereignty. The very essence of the class allegations requires the Political Subdivisions to "possess the same interest and same injury as the class members," (*i.e.*, all persons and all governmental entities, (Doc. 86, ¶¶ 248-49)). *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (cleaned up). If the Political Subdivisions lack the qualifications to be class representatives, they "simply [are] not eligible to represent [the] class[.]" *Id*. at 404. And when a governmental entity brings an action "on behalf of" another person or entity, that action is an exercise in sovereignty as *parens patriae*. *See Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 257-66 (1972) (discussing the history of *parens patriae*, explaining *parens patriae* as suing for general statewide benefit and not for its own commercial interests, and comparing *parens patriae* as "related to class actions"). The Political Subdivisions lack the inherent sovereign authority necessary to bring their class allegations on behalf of *all* persons and *all* governmental entities. Therefore, this Court lacks subject-matter jurisdiction over the Political Subdivisions' class allegations.

**A.      The *parens patriae* authority is inherent in sovereigns—the States.**

The long-held common law doctrine of "*parens patriae*" is "inherent in the supreme power of every State." *Snapp*, 458 U.S. at 600 (quotation marks omitted); *Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 57 (1890) ("The state,

as a sovereign, is the *parens patriae*."); *Standard Oil*, 405 U.S. at 257 (noting the *parens patiae*

function "passed to the States"); *Alden v. Maine*, 527 U.S. 706, 713-14 (1999) (noting "[a]ny

doubt regarding the constitutional role of the States as sovereign entities is removed by the Tenth

Amendment" (cleaned up)).

The nation's history and tradition dictate this sacred balance of sovereignty shared

between the federal government and state governments. "[T]he States entered the federal system

with their sovereignty intact" and "the judicial authority in Article III is limited by this

sovereignty." *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991) (cleaned up).

"States are not mere political subdivisions of the United States. State governments are neither

regional offices nor administrative agencies of the Federal Government…. The Constitution

instead 'leaves to the several States a residuary and inviolable sovereignty,' reserved explicitly to

the States by the Tenth Amendment." *New York v. United States*, 505 U.S. 144, 188 (1992)

(quoting The Federalist No. 39, p. 245 (C. Rossiter ed. 1961)); *see also N.J. Thoroughbred*

*Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (discussing

States' "powers inherent in sovereignty" and explaining the federalist system of government as

one of dual sovereignty).

Because a State "surrenders certain sovereign prerogatives" when it enters the Union, the

State is entitled to "special solicitude in [the] standing analysis." *Massachusetts v. E.P.A.*, 549

U.S. 497, 519 (2007); *McAleenan*, 450 F. Supp. 3d at 1178. To exercise its sovereignty and

establish standing, a State must assert its "quasi-sovereign" interest. *Snapp*, 458 U.S. at 600-01;

*McAleenan*, 450 F. Supp. 3d at 1182. A State's quasi-sovereign interests include the physical,

economic, and general health and well-being of the State's people, the State's ability to develop

and enforce its own legal code, and ensure the State's sovereignty is observed in the federal system. *McAleenan*, 450 F. Supp. 3d at 1182; *Snapp*, 458 U.S. at 607-08.

Altogether, the weight of jurisprudence reinforces sovereignty as a distinguishing quality intrinsically connected to statehood. And each independent State is free to exercise its sovereignty as it deems appropriate, subject to the federal Constitution.

**B.     The Political Subdivisions' legal authority is derived from their States.**

The Supreme Court has emphasized the inherent principle of "sovereign dignity" that only States, *as sovereigns*, represent the interests of all their citizens, the State itself, and the State's political subdivisions. *New Jersey*, 345 U.S. at 372-73. Political subdivisions are subordinate governmental entities, so they lack inherent sovereignty and the accompanying *parens patriae* authority. *See Reynolds*, 377 U.S. at 575 (political subdivisions "never were and never have been considered as sovereign entities" and instead are "subordinate governmental instrumentalities"); *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 412 (1978) (recognizing "States' subdivisions generally have not been treated as equivalents of the States themselves"); *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 54 (1982) ("We are a nation not of city-states but of States" (quotation marks omitted)); *McAleenan*, 450 F. Supp. 3d at 1188 n.15 (discussing weight of federal authority showing political subdivisions lack independent sovereignty).

Because political subdivisions are only "mere instrumentalities of the state," they can only exercise the powers vested in them by the State. *See Bd. of Cnty. Comm'rs v. Lewis*, 203 Kan. 188, 191 (1969); *Reynolds*, 377 U.S. at 575 ("the number, nature, and duration of powers conferred upon [political subdivisions] and the territory over which they shall be exercised rests

8

in the absolute discretion of the state" (cleaned up)); *Greater Heights Acad. v. Zelman*, 522 F.3d 678, 680 (6th Cir. 2008) ("Being a subdivision of the state, the State may withhold, grant or withdraw powers and privileges from [a political subdivision] as it sees fit." (cleaned up)); *Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 241 (Colo. 1986) ("[C]ounties, unlike states, are not independent governmental entities existing by reason of any inherent sovereign authority of their residents.").

Because political subdivisions lack inherent sovereignty, the Tenth Circuit looks to State law to "determine whether [a political subdivision] has been authorized to represent a state's sovereign interests." *McAleenan*, 450 F. Supp. 3d at 1188 n.15 (quoting *Thibaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800 (10th Cir. 2011)); *Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183, 1192-93 (10th Cir. 1991) (examining state law to determine a political subdivision's ability to sue); *Warren Cnty. v. North Carolina*, 528 F. Supp. 276, 282-83 (E.D.N.C. 1981) (rejecting argument that counties can invoke *parens patriae* because, "as political subdivisions," they "have only those powers necessary to the accomplishment of their declared objectives"); *Bd. of Cnty. Comm'rs of Cnty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181, 1185-86 (D. Colo. 2007) (concluding county lacked standing to sue when its action was not authorized by state law). Thus, each of the Political Subdivisions in this action possess varying degrees of legal authority and substantively different legal interests.

Even when a State has authorized a political subdivision to represent that State's sovereign interests, that authorized political subdivision cannot exercise its authority on behalf of *other* States. *See Gore*, 517 U.S. at 571 (noting that States can only act within their jurisdiction

because each State is independent); *Huntington*, 146 U.S. at 669 ("Laws have no force of themselves beyond the jurisdiction of the State which enacts them, and can have extra-territorial effect only by the comity of other States.").

### C.     The Political Subdivisions' *actual* legal authority warrant dismissal of their improper class allegations.

Because the Political Subdivisions' actual legal authority is designed *and* constrained by their respective States, the Court must look to their respective States' laws. The relevant state laws do not specifically permit the Political Subdivisions to bring these actions as a class. And because federal law only permits governmental entities to bring *parens patriae* claims under the Sherman Act through a States' attorneys general (or the federal government), it also does not authorize their suit. 15 U.S.C. § 15c (permitting *parens patriae* actions only through a State's attorney general); *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 131 (9th Cir.) ("[P]olitical subdivisions such as cities and counties, whose power is derivative and not sovereign, cannot sue as *parens patriae*, although they might sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants."), *cert. denied* 414 U.S. 1045 (1973).

*Kansas Political Subdivisions*

Under Kansas law, Kansas political subdivisions—here, Ford County[5]—are *not* empowered to sue on behalf of all persons and all governmental entities. Kansas counties possess

---

[5] Plaintiff Ford County, Kansas. (Doc. 86, ¶ 37). Kansas objects as to the purported plaintiff because K.S.A. 19-105 explicitly requires suits by counties to be brought in the name of "The board of county commissioners of the county of _____." On this basis alone, Ford County should be dismissed for failing to state a claim. *Cf. Est. of Holmes by & through Couser v. Somers*, 387 F. Supp. 3d 1233, 1248 (D. Kan. 2019) ("In order to state a claim against a county, Plaintiff must sue the 'board of county commissioners' of the county." (citing K.S.A. 19-105)), *aff'd sub nom. Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020).

statutory home rule power, which is constrained to excising authority to "determine their local affairs and government" as authorized by state law and as "especially conferred by law." K.S.A. 19-101; *Cunningham v. Blythe*, 155 Kan. 689, Syl. ¶ 1 (1942) (Kansas "County commissioners have only such powers as are conferred upon them by statute."); *State ex rel. Stephan v. Bd. of Cnty. Comm'rs of Cnty. of Lyon Cnty.*, 234 Kan. 732, 736-37 (1984) ("The home rule powers of a [Kansas] county are thus subject to determination and limitation by the legislature and do not emanate from the constitution.").

Ford County's actual authority under Kansas law provides that counties "may transact all county business and perform all powers of local legislation and administration it deems appropriate," "subject to all acts of the legislature which apply uniformly to all counties." K.S.A. 19-101a(a). And Kansas law forbids Ford County from doing exactly what it attempts here: superseding or impairing other political subdivisions' exercise of their home rule authority. K.S.A. 19-101a(a)(4); *see also Blevins v. Hiebert*, 13 Kan. App. 2d 318, 321 (1989) (noting "exercise of home rule powers by a county must be directed to local legislation and administration" and any "[l]ocal acts with extraterritorial impact should stand if not in conflict with a state statute"), *aff'd*, 247 Kan. 1 (1990). To the contrary, as discussed more thoroughly below, Kansas law vests the attorney general exclusively with the authority to bring Ford County's claims statewide. *See* §§ II(b), (c), *infra*. Ford County is not statutorily authorized to bring its class allegations, and it is not authorized to assert this "quasi-sovereign" interest as *parens patriae*.

*Non-Kansas Political Subdivisions*

11

The other, non-Kansas political subdivisions in this litigation (Baltimore,[6] San Mateo County,[7] San Jose,[8] and San Diego[9]) each have varying degrees of legal authority. However (and unsurprisingly), the Kansas legislature has never authorized these political subdivisions to represent Kansas's sovereign interests here or anywhere. Thus, they cannot represent a class of "persons" or "governmental entities" on behalf of Kansas. This holds true for every other State that has not authorized its sovereign interests to be represented by these plaintiffs. Notwithstanding, the majority of Kansas's briefing intentionally focuses on Kansas law and Kansas-specific concerns to respect the sovereign dignity of the other States represented by the other political subdivisions here. Dismissing the Political Subdivisions' class allegations is warranted after reviewing the non-Kansas political subdivisions' actual legal authority and comparing it with Kansas political subdivisions' legal authority.

*First*, the non-Kansas political subdivisions are generally authorized to represent their State's sovereign interests. In California, political subdivisions[10] are permitted to exercise the powers granted to them by the State. *Pac. Gas & Elec. Co. v. Cnty. of Stanislaus*, 16 Cal. 4th 1143, 1158-59 (1997) (California counties are political subdivisions of state exercising only powers granted by state law); *State Bldg. & Constr. Trades Council of Cal. v. City of Vista*, 54

---

[6] Plaintiff Mayor and City Council of Baltimore. (Doc. 86, ¶ 53.)

[7] Plaintiff County of San Mateo. (Doc. 86, ¶ 30.)

[8] Plaintiff City of San Jose, California. (Doc. 86, ¶ 29.)

[9] Plaintiff City of San Diego. (Doc. 86, ¶ 28.)

[10] For the sake of consistency, Kansas uses the term "political subdivisions" to refer to the California county plaintiff and two California charter city plaintiffs. However, Kansas necessarily concedes that California charter cities are not "political subdivisions" but also do not "exercise any functions of the state," such as suing as *parens patriae* as an inherent sovereign state. *See Haytasingh v. City of San Diego*, No. D076228, 2021 WL 5235563, 387 (Cal. Ct. App. July 9, 2021) (quoting *Otis v. City of Los Angeles*, 52 Cal. App. 2d 605, 611-12 (1942)).

Cal. 4th 547, 554-56 (2012) (California charter cities derive home rule authority from state constitution and subject only to State's general laws). And, California county and city attorneys (not counties or cities themselves) are authorized to bring some *parens patriae* actions. *See, e.g.*, Cal. Bus. & Prof. Code § 16759(a), (b) (each describing authority under California's Cartwright Act); *but see Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1182 (N.D. Cal. 2001) (private parties authorized to sue "on behalf of general public" under Cal. Bus. & Prof. Code § 17200). In Maryland, political subdivisions are *also* authorized to exercise varying degrees of legal power but each also derive such power from their State. *See, e.g.*, Md. Const. art. 11-A, § 1 (Baltimore and charter counties may exercise home rule authority subject to state constitution and general state laws); *see also State's Att'y of Balt. City v. City of Baltimore*, 337 A.2d 92, 97 (Md. 1975). And only Maryland's attorney general is authorized to sue as *parens patriae* on behalf of Maryland's residents and political subdivisions.[11] *See, e.g.*, Md. Code Ann., Com. Law § 11-209(b)(5).

*Second*, the non-Kansas political subdivisions' legal authority emphasizes Kansas's position that (a) Kansas's legal claims and interests *cannot* be represented by any of the political subdivisions here, and (b) Kansas political subdivisions have not been authorized to do the same as the non-Kansas political subdivisions. The non-Kansas political subdivisions are explicitly *prohibited* from exercising any authority outside of their respective jurisdictions. *See* Cal. Const. art. 11, § 7 (restricting county and city actions to "within its limits"); *Burns Internat. Sec. Servs.*

---

[11] Kansas is unaware of any reported authority showing that Baltimore possesses *parens patriae* authority. *See Mayor & City Council of Balt. v. Monsanto Co.*, No. CV RDB-19-0483, 2020 WL 1529014, at *12 (D. Md. Mar. 31, 2020) (unreported opinion finding Baltimore had standing to sue in a *parens patriae* capacity but *exclusively* relying on caselaw on Maryland's *parens patriae* authority).

*Corp. v. Cnty. of Los Angeles*, 123 Cal. App. 4th 162, 168 (2004); Md. Const. art. 11-A, § 4 (restricting Baltimore to acting within its territorial limits); *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 443 (D. Md.), *as corrected* (Mar. 20, 2014). And comparing the legal authority of the Kansas political subdivision with the non-Kansas political subdivisions in this litigation reinforces that the State (via the attorney general) is the sole representative of Kansas's legal claims.

Finally, all three sovereign interests in this litigation (*i.e.*, Kansas, Maryland, and California) epitomize why class actions are not the proper vehicle for sovereign litigation. Each state authorizes specific law enforcement officials and public prosecutors to act on behalf of their sovereigns. *See, e.g.*, K.S.A. 75-710(a). And in most instances, each State has authorized the hiring of outside counsel with special appointments. *See, e.g.*, K.S.A. 19-723. But here, *and because of the nature of class action litigation*, the sovereign prerogative is ignored: unauthorized class action attorneys wholly disconnected from the sovereigns are now wielding unauthorized sovereign authority and influence without statutory authority. *See In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d at 270 (dismissing governmental entity class allegations because "states have a strong interest in individually controlling the prosecution of their own cases"); *Walker v. Liggett Grp., Inc.*, 982 F. Supp. 1208, 1210-11 (S.D.W. Va. 1997) (finding dismissal appropriate where class action counsel is not authorized to represent the States; "these counsel act *ultra vires*"). This was never the intended effect of Rule 23, and it must be stopped.

The Court should dismiss the Political Subdivisions' class allegations because they fundamentally lack *parens patriae* standing to bring this action as pleaded, which means they

cannot satisfy their Article III burden and this Court lacks subject-matter jurisdiction.[12] Allowing the Political Subdivisions to proceed means every State will "be judicially impeached on matters of policy by [one of Kansas's, Maryland's, and California's] subjects." *See New Jersey*, 345 U.S. at 372-73.

### D.    The Political Subdivisions lack Kansas's sovereignty to represent Kansas and Kansas's legal claims.

The Political Subdivisions bring two primary claims on behalf of all Kansans, the State of Kansas, and its political subdivisions: (1) one claim under the Sherman Act, 15 U.S.C. § 1, and (2) one claim under the Kansas Restraint of Trade Act, K.S.A. 50-101 *et seq*. (Doc. 86; ¶¶ 260-65, 307-08.) *First*, Kansas possesses the statewide legal claims as the real party in interest to sue as *parens patriae* in Kansas on a statewide basis. *Second*, Kansas possesses the statewide legal claims as the real party in interest to sue on behalf of the State, its agencies, and all of its counties and cities. As discussed more thoroughly below, Kansas is the real party in interest for all of its statewide claims. *See* §II, *infra*; *see also Doyle v. Colborne Mfg. Co.*, 93 F.R.D. 536, 537 (D. Kan. 1982) ("A real party in interest is one who owns the substantive right to be enforced."). But, Kansas also exclusively possesses its statewide legal claims intrinsically due to its sovereignty under the Tenth and Eleventh Amendments. Put differently, the Political Subdivisions cannot misuse federal *procedural* rules to preempt, usurp, or misappropriate any State's sovereignty.

---

[12] And to the extent the Political Subdivisions deny they are suing as *parens patriae*, the Political Subdivisions also cannot sue on a statewide basis for Kansas's governmental entities' proprietary interests. When a governmental entity sues on its proprietary interests, it exercises its function as "an enterprise" in commercial activity like a private for-profit non-governmental entity. *See, e.g.*, *State ex rel. Stephan v. Brotherhood Bank & Tr. Co.*, 8 Kan. App. 2d 57, 62 (1982). The Political Subdivisions are not the real parties in interest to represent Kansas's governmental entities' proprietary interests either. *See* § II, *infra*.

Under the Tenth Amendment, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." *See also Alden* 527 U.S. at 713-14. Although this amendment's reiteration of state sovereignty is often characterized as a "truism," its weight "is not without significance." *Fry v. United States*, 421 U.S. 542, 547 n.7 (1975). "The Amendment expressly declares the constitutional policy that Congress may not exercise power in a fashion that impairs the States' integrity or their ability to function effectively in a federal system." *Fry v. United States*, 421 U.S. 542, 547 n.7 (1975).

Despite the federal Constitution's limits on state sovereignty in specific circumstances (*i.e.*, via the federal government's enumerated powers), federal authority cannot be used "to issue direct orders to the governments of the States." *N.J. Thoroughbred Horsemen's Ass'n*, 584 U.S. at 471. Here, that means the Political Subdivisions cannot misuse Rule 23 to impair Kansas's sovereignty over itself, its political subdivisions, and its citizens as *parens patriae*. To permit the Political Subdivisions' class allegations to proceed would be a drastic invasion of state sovereignty by distorting the authority of procedural rules.

Similarly, under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." A state may voluntarily waive its Eleventh Amendment sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (a sovereign's decision to waive immunity must be unequivocal and "altogether voluntary" (citation omitted)). In *College Savings Bank*, the Court held "where the constitutionally guaranteed protection of the

16

States' sovereign immunity is involved, the point of coercion is automatically passed—and the voluntariness of waiver destroyed—when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity[.]" *Id*. at 687. It is intolerable to suggest that procedural rules would have any waiver effect on sovereign entities.

Here, the Political Subdivisions have placed Kansas in a quagmire. Kansas is not in this District voluntarily through affirmative litigation and, in fact, argues its claims should be heard in Kansas's courts. *See* § III, *infra*. Kansas is *compelled* to be here to defend its sovereignty. Under an Eleventh Amendment analysis, Kansas's sovereignty is at risk because the effect of the judgment on the Political Subdivisions' class allegations would either force Kansas to act or prevent it from acting in the future. *See In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d at 270 (recognizing "significant sovereignty issues may preclude defining a class to include state entities as absent class members under the Eleventh Amendment"); *Walker*, 982 F. Supp. at 1210 (excluding States from alleged class to prevent Eleventh Amendment violation because the States had "not consented affirmatively to participate in this case, nor have they acquiesced in any way to suggest their willing participation").

Courts have found the "potentially sensitive issues" that arise in the context of political subdivision being named plaintiffs in class actions warrant significant caution and generally dismissal. *See In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2015 WL 14047405, at *7 (E.D. Mich. Apr. 30, 2015); *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *18 (N.D. Cal. Oct. 2, 2014) (dismissing political subdivision plaintiffs due to lack of manageability and noting the broad procedural powers of Rule 23 does not confer on court the power permit named plaintiffs to represent classes of governmental

plaintiffs). For the sake of state sovereignty under common law and the Constitution, the Political Subdivisions' class allegations must be dismissed.

## II.    The Political Subdivisions' class allegations must be dismissed because Kansas is the real party in interest for Kansas's claims.

Kansas, *not* the Political Subdivisions, is the real party in interest for Kansas's claims. All actions in federal court "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In diversity cases, the forum state's substantive law determines the real party in interest under Rule 17(a). *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1257 (D.N.M. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Under New Mexico choice-of-law rules and Kansas law, the State (through the attorney general) is vested with the authority to bring claims for statewide restraint of trade, consumer protection, federal antitrust, equitable and injunctive relief, and other quasi-sovereign interests. The Political Subdivisions lack this same authority for Kansas's claims and, therefore, fail to state a claim upon which relief can be granted. *See Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 916 (D. Kan. 1997) (stating Rule 12(b)(6) motions to dismiss may be grounded in a real party in interest objection).

### A.  Kansas law determines the real party in interest for Kansas's claims.

Under New Mexico's choice-of-law rules, which apply here, "New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Guidance Endodontics, LLC*, 749 F. Supp. 2d at 1258 (cleaned up). Or, the State where the harm occurred is the state substantive law that governs.

Each of the Political Subdivisions' claims for Kansas end purchasers are based on end purchaser transactions that literally occurred *in Kansas*. So, the alleged injuries and harms of the Kansas "persons" and "governmental entity" end purchasers the Political Subdivisions attempt to represent *necessarily* occurred in Kansas. Under New Mexico's *lex loci delicti commissi* rule, Kansas law governs.

"Under Kansas law, the real party in interest is the one who, by virtue of the substantive law, holds the right sought to be enforced." *Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188, 1201 (D. Kan.), *aff'd*, 635 F. App'x 483 (10th Cir. 2015); *see also* K.S.A. 60-217(a) (Kansas civil action may be prosecuted on behalf of real party in interest when authorized by statute). Kansas law vests *only* the State, through its attorney general, with the right to sue over statewide violations of the Sherman Act, statewide violations of the Kansas Restraint of Trade Act, and for statewide equitable and injunctive relief. Accordingly, the State is the real party in interest.

**B. Kansas law designates the State as the real party in interest and vests statewide authority in the attorney general.**

As already discussed, the inherent sovereign and statutory authority to sue over statewide claims based on federal antitrust, restraints of trade, and unjust enrichment and to otherwise protect its residents' health and wellbeing is reserved to Kansas as a quasi-sovereign interest. *See* K.S.A. 50-109 (authorizing attorney general to bring statewide restraint of trade claims); K.S.A. 75-702 (authorizing attorney general to represent the State in all actions, including in federal court); K.S.A. 50-628 (authorizing attorney general to enforce state consumer protection laws statewide); 15 U.S.C. § 15c (authorizing attorney general to enforce federal antitrust laws on

behalf of the State as *parens patriae*); 15 U.S.C.§ 15h (referring to state law for applicability of federal antitrust *parens patriae* actions).

The Kansas Legislature codified its intent to designate the attorney general—not political subdivisions—as the representative for the State in statewide litigation. For instance, K.S.A. 75-702 provides that the attorney general "shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals and in all federal courts, in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense." As the Kansas Supreme Court has recognized, "The attorney general is the superior of the county attorney, and whenever the state and the public interest are involved, the attorney general is a party to the action. Wherever the public interest is involved or the state is a party, the attorney general is primarily the proper counsel to appear." *Mem'l Hosp. Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668 (1986). This aligns with the "general rule" recognized by the Tenth Circuit (and other courts) that "the state attorney general . . . alone has the right to represent the state as to litigation involving a subject matter of statewide interest." *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980); *see also Off. of the People's Couns. for D.C. v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 587 (D.C. 2024) (contrasting agency's "limited" litigation authority "with the D.C. Attorney General's plenary authority to litigate").

The Political Subdivisions' suit is effectively a statewide suit (on a nationwide basis) to resolve statewide antitrust, restraint of trade, and consumer protection claims. But courts have consistently recognized that when alleged harms affect governmental units on a statewide basis, the State (via the attorney general) is the proper party to sue. *See Mem'l Hosp. Ass'n, Inc. v.*

*Knutson*, 239 Kan. 663, 668 (1986); *Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 496 (4th Cir. 1981) ("[C]ommon sense dictates that when an alleged wrong affects governmental units on a state-wide basis, the state should seek redress on their behalf as well as on its own rather than parcelling out the actions among local agencies."); *Illinois v. Associated Milk Producers, Inc.*, 351 F. Supp. 436 (N.D. Ill. 1972) (holding the State, by its attorney general, was the real party in interest to bring statewide antitrust claims on behalf of itself and its political subdivisions). Because Kansas law vests the authority to bring statewide claims exclusively in the State, Kansas—*not the Political Subdivisions*—is the real party in interest. *See, e.g.*, *Puerto Rico v. Cordeco Dev. Corp.*, 534 F. Supp. 612, 614-16 (D.P.R. 1982) (concluding Puerto Rico was the real party in interest because it had inherent and statutory authority).

The Court should dismiss the Political Subdivisions' improper class allegations for failing to state a claim upon which relief can be granted because the Political Subdivisions are not the real parties in interest, especially for Kansas's claims.

### C.  The Political Subdivisions' powers end at their jurisdictional boundaries.

Although Kansas law grants political subdivisions "home rule" power, allowing them to govern local affairs, their authority is strictly limited by statute and cannot extend beyond the county's boundaries. *See* Kan. Const. art. 12, § 5 (Kansas cities' constitutional home rule authority); K.S.A. 19-101c (Kansas counties' statutory home rule authority); *City of Junction City v. Griffin*, 227 Kan. 332, 334 (1980) (recognizing city home rule powers are subject to uniform legislative enactments); *Bd. of Cnty. Comm'rs v. Nielander*, 275 Kan. 257, 264 (2003) (recognizing county home rule powers limited to "local and administrative duties" as local unit deems appropriate; subject to constitutional and statutory limitations). For all Kansas political

21

subdivisions, their "home rule" power is intentionally designed to give *each* political subdivision "the largest measure of self-government." Kan. Const. art. 12, § 5; K.S.A. 19-101c. But, when Kansas political subdivisions exercise their "home rule" power, the political subdivisions may only act *locally* and *consistent with* Kansas law. *See* Kan. Const. art. 12, § 5(b) (Kansas cities are "empowered to determine their local affairs and government"); K.S.A. 19-101 (Kansas counties are empowered "to determine their local affairs and government," as authorized by statute). In other words, one political subdivision making *statewide* legal claims cannot do so without infringing on the constitutional and statutory rights of all other Kansas political subdivisions. And on a statewide basis, the same political subdivision cannot make a statewide claim without infringing on the State's constitutional and statutory rights.

Unlike the Political Subdivisions (and as already discussed), Kansas and federal law designates the attorney general as the *exclusive* representative of the State in matters of statewide concern. Any political subdivision's attempt to expand its *localized authority* to statewide or nationwide claims infringes on the State's sovereign powers, encroaches on the rightful authority of *other* political subdivisions, and grossly exceed the scope of its home rule authority. Or more succinctly, the Political Subdivisions have no authority to act outside of their jurisdictional boundaries. *See State v. Vrabel*, 301 Kan. 797, 813 (2015) (discussing the importance of jurisdictional limitations on cities and counties to protect local autonomy of other political subdivisions, specifically in a law enforcement context); *Gore*, 517 U.S. at 571 (noting that States can only act within their jurisdiction because each State is independent).

### D. The Political Subdivisions' class allegations are an improper exercise of sovereign authority and face insurmountable class certification issues.

The Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (cleaned up). The Political Subdivisions—on their face—do not share the same sovereign interests or injuries of the States or other political subdivisions. As discussed above, allowing the Political Subdivisions to proceed would improperly expand their local authority to usurp Kansas's sovereign powers and commandeer other Kansas political subdivisions' local interests, both of which are contrary to Kansas law.

It is appropriate for the Court to evaluate the Political Subdivisions' class allegations at this stage to determine whether absent parties' interests are fairly represented. *See id.* at 160. Indeed, Rule 23 encourage Courts to act as soon as possible regarding class issues. *See* Fed. R. Civ. P. 23(c)(1)(A), (d). Courts in the Tenth Circuit routinely strike class allegations at the pleading stage when they are facially deficient. *See, e.g.*, *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004); *see also* Fed. R. Civ. P. 12(b)(6), 12(f), 23(d). The Political Subdivisions' proposed class is incompatible with federal and state constitutional, statutory, and common law, which will inevitably defeat the class. *See Cnty. of Dorchester v. AT&T Corp.*, 407 F. Supp. 3d 561, 568 (D.S.C. 2019) (finding proposed class of counties could not proceed because it impedes on other counties and the State, contrary to state law); *In re Auto. Parts Antitrust Litig.*, 2015 WL 14047405, at *7 (dismissing governmental entity named plaintiffs' class allegations for lack of standing and declining the exploration of "every municipal and regional government in the nation"); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *18 (dismissing political subdivision plaintiffs due to lack of manageability and

noting the broad procedural powers of Rule 23 does not confer on court the power permit named plaintiffs to represent classes of governmental plaintiffs).

Treating sovereign governmental entities as indistinguishable from private individuals disregards the distinct and individualized interests of *each* State, county, city, and other political subdivision. And the Political Subdivisions' class allegations blatantly fail to account for the highly individualized and localized interests of each State and political subdivision. Courts have consistently rejected class allegations where claims require individualized factual and legal inquires, as is the case here. *See, e.g.*, *Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 279 (4th Cir. 1980) (holding district court abused its discretion permitting class of "great number" of "geographic spread of the decisionmakers" with "almost complete local autonomy"); *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006) (class allegations rejected where "multiple decisionmakers with significant local autonomy exist"); *Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 109 (D. Kan. 2024). Altogether, the Political Subdivisions have not and will not meet their burden under Rule 23(b) because they lack legal authority over sovereign States and those States' political subdivisions. At this early stage, the Court should dismiss the Political Subdivisions' class allegations.[13]

### III.    The proper venue for Kansas's claims is in Kansas.

Finally, the District of New Mexico is the wrong district for Kansas's claims. The Political Subdivisions claim venue is appropriate here, as indirect purchasers, because "a

---

[13] If the Court declines to dismiss, it should alternatively strike the Political Subdivisions' class allegations under Rule 12(f). Fed. R. Civ. P. 23(d)(1)(D); *see Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1271 (D. Colo. 2023) ("A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." (quoting *Cnty. of Dorchester v. AT & T Corp.*, 407 F. Supp. 3d 561, 565-66 (D.S.C. 2019))).

substantial portion of the conduct alleged in this Complaint occurred in, or directly affected shale oil production in," this District. (Doc. 86, ¶ 89;) *see also* 28 U.S.C. § 1391(b). In *reality*, all of the Political Subdivisions' harms and injuries occurred in their respective states. *See* (Doc. 86, ¶¶ 28-30, 37, 53.)

*First*, and as repeatedly discussed, the Political Subdivisions do not own the Kansas legal claims they purport to represent. None of the Political Subdivisions purchased crude oil derivative fuel products in Kansas, except one (Ford County). *See Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 490 (5th Cir. 2003) (recognizing "all named plaintiffs to a class action must satisfy the venue requirements").

*Second*, the Shale Oil Defendants' alleged conduct did not substantially occur within this District. *See Bd. of Cnty. Comm'rs of Custer Cnty. v. Wilshire Oil Co. of Texas*, 523 F.2d 125, 128 (10th Cir. 1975) ("[I]n determining whether a corporation is transacting business within a district, practical business conceptions are to be considered rather than hair-splitting legal technicalities."). And in light of the alleged misconduct, the "actual unity and continuity of [the] whole course of conduct" did not occur in this District. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 402 F. Supp. 262, 321 (E.D. Pa. 1975) (citing *U.S. v. Scophony Corp. of Am.*, 333 U.S. 795, 817 (1948)). While the Shale Oil Defendants likely transacted *some* business in this District, the Political Subdivisions' allegations mostly focus on alleged misconduct that occurred elsewhere. *See*, *e.g.*, (Doc. 86, ¶¶ 70-79, 113, 116-17, 120, 132, 141, 150, 168.)

Observing the whole course of alleged misconduct and the alleged injuries, this District is not the appropriate venue. Especially for Kansas's legal claims, the appropriate venue is either in

Kansas state courts or in the District of Kansas. Accordingly, the Political Subdivisions' class allegations should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Political Subdivisions' class allegations from the Consolidated Class Action Complaint without prejudice.

**Dated:** [DATE]                            Respectfully submitted,

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/* DRAFT
Melanie S. Jack, D.N.M. Bar No. 25-85
  *First Assistant Attorney General*
Nicholas C. Smith, D.N.M. Bar No. 25-77
  *Assistant Attorney General*
Adam T. Steinhilber, D.N.M. Bar No. 25-83
  *Assistant Solicitor General*
**OFFICE OF ATTORNEY GENERAL**
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-3751
Fax:    (785) 291-3699
Email:  Melanie.Jack@ag.ks.gov
             Nicholas.Smith@ag.ks.gov
             Adam.Steinhilber@ag.ks.gov

*Attorneys for State of Kansas*

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance.

*/s/* DRAFT
Nicholas C. Smith

27